[Doc. No. 43]

## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

RHONDA DENSON,                    :
                                  :
                Plaintiff,        :
                                  :
        v.                        :     Civil No. 13-5315 (JS)
                                  :
ATLANTIC COUNTY DEPARTMENT         :
OF PUBLIC SAFETY,                 :
                                  :
                Defendant.        :
_____:

### <u>OPINION</u>

This Opinion addresses whether plaintiff Rhonda Denson makes out viable FMLA interference and retaliation claims and, if yes, whether the claims are barred by the statute of limitations. The Court finds that fact questions exist as to whether plaintiff's claims are viable. However, plaintiff's claims are barred by the statute of limitations.

This matter is before the Court on the "Motion for Summary Judgment" ("Motion") filed by defendant Atlantic County Department of Public Safety. [Doc. No. 43]. Plaintiff opposes defendant's motion. <u>See</u> Plaintiff's Opposition ("Pl.'s Opp'n") [Doc. No. 45]. The Court also received defendant's reply to plaintiff's opposition. <u>See</u> Defendant's Reply ("Def.'s Reply") [Doc. No. 47]. The Court exercises its discretion to decide defendant's motion

without oral argument. See Fed. R. Civ. P. 78; L. Civ. R. 78.1.[1]
For the reasons to be discussed defendant's motion will be granted.

**BACKGROUND**

Plaintiff is a Corrections Officer who works at defendant's Atlantic County Justice Facility. The terms of plaintiff's employment are controlled by a Collective Bargaining Agreement ("CBA") between defendant and plaintiff's union. This matter involves disciplinary action taken by defendant against plaintiff in response to plaintiff's absences from work on December 2 and 3, 2010. Plaintiff disputes the basis for discipline and argues that since her absences were permissible under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq., ("FMLA"), her discipline should have been revoked.

On November 30, 2010, plaintiff contacted a member of defendant's prison operations staff to find out if she had any available time off. See Defendant's Statement of Facts ("Def.'s SOF") ¶ 14 [Doc. No. 43-1]; Plaintiff's Supplemental Statement of Facts ("Pl.'s SOF") ¶ 14 [Doc. No. 45-3].[2] The reason plaintiff inquired about the availability of time off was because she wanted to attend her aunt's funeral which was scheduled on December 3,

---

[1] Pursuant to 28 U.S.C. § 636(c), the parties consented to the jurisdiction of this Court to hear the case. Reference Order [Doc. No. 16].

[2] The Court will consider "Plaintiff's Response to Defendant's Statement of Material Facts" [Doc. No. 45-4] and "Plaintiff's Supplemental Statement of Facts" [Doc. No. 45-3]."

2010. Deposition of Rhonda Denson ("Denson Dep.") at 76:16-21 [Doc. No. 43-4]. Plaintiff was told she did not have any available time off. Id. at 76:22-24.

On December 2, 2010, plaintiff called Stacey Harper of defendant's operations staff to indicate she was not coming to work. Def.'s SOF ¶ 15; Pl.'s SOF ¶ 15. The parties dispute exactly what plaintiff said to Harper. Defendant asserts plaintiff told Harper the reason for her absence was "comp in lieu of." Def.'s SOF ¶ 15. Plaintiff maintains she told Harper "sick in lieu of." Pl.'s SOF ¶ 15. Plaintiff acknowledges that when defendant's employees take sick leave "in lieu of" they must submit a doctor's note explaining the reason for their absence. Denson Dep. at 79:7-15.

Later on the morning of December 2, 2010, Captain Giberson of defendant's operations staff called plaintiff at home to inquire about the reason for her absence. Id. at 77:21-78:6, 79:2-6. Plaintiff stated she was not feeling well and was going to see a doctor. Id. at 79:5-6. Subsequently, plaintiff went to the emergency room at Inspira Medical Center where she complained of breathing trouble.[3] Id. at 81:18-19, 85:2-4. While at Inspira plaintiff was treated by a doctor who prescribed Prednisone and instructed her not to return to work until December 6, 2010. Pl.'s

---

[3] Plaintiff refers to Inspira Medical Center as "Underwood." Denson Dep. at 81:18-19.

SOF ¶ 3. The morning of December 3, 2010, plaintiff called out sick again. Plaintiff also faxed a supporting doctor's note to defendant and informed defendant that she would be applying for FMLA leave. Id. ¶ 19; Def.'s Resp. to Pl.'s SOF ¶ 19 [Doc. No. 47-1]. Plaintiff admits that later on December 3, 2010, she left her home and attended her aunt's funeral. Pl.'s SOF ¶ 67; Def.'s SOF ¶ 22. Plaintiff did not call her shift commander or another supervisor to inform him or her that she was leaving her residence. Plf.'s Resp. to Def.'s SOF ¶ 24 [Doc. No. 45-4]; Def.'s SOF ¶ 24.

Plaintiff returned to work on December 7, 2010. Pl.'s SOF ¶ 4. Upon returning to work plaintiff submitted her FMLA application. Id. ¶ 31. The same day defendant issued two disciplinary notices to plaintiff for her alleged unauthorized absences. Id. ¶¶ 22, 23; Def.'s SOF ¶¶ 17, 18; Def.'s Brief Exhibit D (Notices of Disciplinary Hearing). After she was issued her disciplinary notices plaintiff submitted several different FMLA applications to Deputy Warden Cohen which were denied. Pl.'s SOF ¶ 61; Def.'s SOF at ¶¶ 19, 20. The primary reason for the denials was that plaintiff did not comply with the requirement that her doctor review her job description and identify which of her core job functions were impacted by her diagnosis. See Pl.'s SOF ¶¶ 57-59; Def.'s Resp. to Pl.'s SOF ¶ 57. On each occasion after plaintiff's FMLA application was denied, Cohen prepared a memo to plaintiff advising her how to correctly complete her FMLA paperwork. See Def.'s Reply Exhibits

4

A-E [Doc. No 47-2]. For example, plaintiff's application was denied because she failed to submit the job description she was given to use. Def.'s Reply Exhibits A, B.

One of the parties' primary disputes centers on defendant's "job description" requirement. That is, defendant required plaintiff to include with her FMLA application a job description reviewed by her doctor. Plaintiff avers the requirement was not specifically set forth in defendant's written FMLA policy and was uniquely applied to her. In addition, plaintiff argues the job description requirement was created out of whole cloth to frustrate her FMLA application. See Pl.'s SOF at ¶¶ 56-59. Defendant does not dispute the job description requirement was not specifically set forth in its written policy. Deposition of Deputy Warden Geraldine Cohen ("Cohen Dep.") at 41:19-42:3 [Doc. No. 45-8]. However, Cohen testified the prison started the job description requirement because an FMLA application requires the applicant to provide her doctor with an accurate description of her job duties so she can be properly evaluated for FMLA leave. Id. at 36:20-23, 38:18-39:18. Cohen also testified the job description requirement existed since at least as early as April 2010, when Cohen was promoted to Deputy Warden and began reviewing FMLA applications. Id. at 37:12-18.

Under defendant's practice FMLA applications originate in the operations department. Id. at 32:20-21; Deposition of Captain

Giberson ("Giberson Dep.") at 60:7-10 [Doc. No. 45-14]. The operations department is responsible for providing FMLA paperwork to employees who request information about the FMLA, including the employee's job description, as well as giving employees verbal instructions on completing the application. Cohen Dep. at 32:20-33:3; Giberson Dep. at 59:24-60:10. At all relevant times Cohen oversaw the operations department and took an active role in the resolution of FMLA applications. See Cohen Dep. at 219:6-11, 223:14-226:1. When Cohen had questions about the processing of FMLA applications she contacted an attorney in the Atlantic County Law Department, Susan Gross, Esquire. Id. at 39:19-40:13; Susan Gross Deposition ("Gross Dep.") at 9:8-17 [Doc. No. 49-1].

On January 13, 2011, defendant granted plaintiff's FMLA application retroactive to December 2, 2010. Pl.'s SOF at ¶ 61; Def.'s Resp. to Pl.'s SOF ¶ 61. However, defendant did not withdraw the disciplinary actions against plaintiff, asserting that even though plaintiff was retroactively granted FMLA leave, she still violated defendant's job requirements that had been collectively bargained by her union. Def.'s Brief at 9. Plaintiff was issued a one day suspension because she did not provide all of the requested information when she was asked on December 2, 2010 why she called out. Pl.'s SOF ¶ 24; Def.'s Resp. to Pl.'s SOF ¶ 24. Pursuant to defendant's FMLA policy, "[a]n employee must provide sufficient information to the County to establish an FMLA/FLA qualifying

reason for the requested leave." Def.'s Brief Exhibit H ¶ 12(c).[4] Plaintiff was suspended three days because she left her home on December 3, 2010 to attend her aunt's funeral without telling defendant she was leaving her house after calling out sick. Pl.'s SOF ¶ 25; Def.'s Brief Exhibit D. When calling out sick defendant's policy required employees to remain at their residence or other approved location. Id. Exhibit G. Defendant's Notices of Minor Disciplinary Action are attached to defendant's Brief as Exhibit D. Plaintiff did not grieve or appeal her discipline, nor did plaintiff request PERC arbitration. Def.'s SOF ¶¶ 17, 18; Plf.'s Resp. to Def.'s SOF ¶¶ 17, 18.

Plaintiff initiated this suit by way of complaint on August 2, 2013. The crux of plaintiff's complaint is her accusation that defendant interfered with her FMLA rights and retaliated against her for exercising her FMLA rights. Compl. ¶¶ 74, 77 [Doc. No. 1-1]. Plaintiff complains that although she was ultimately granted FMLA for her absences on December 2 and 3, 2010, defendant should not have required her to fill out multiple corrected FMLA applications. Id. ¶¶ 49-56, 74. Plaintiff also argues the discipline defendant imposed for her work rule violations on December 2 and 3, 2010, was in retaliation for her FMLA request. Id. ¶ 77.

---

[4] The information required under the defendant's work rules is more extensive than the notice required under the FMLA.

Defendant argues plaintiff was not entitled to FMLA leave and that she fraudulently sought leave. Defendant also argues that regardless of whether plaintiff was eligible for FMLA leave, her call outs and subsequent conduct violated its work rules, thereby subjecting her to discipline. In addition, defendant argues plaintiff did not provide adequate notice of her intention to exercise her FMLA rights. Importantly, defendant argues plaintiff's case is barred by the statute of limitations.

Plaintiff argues defendant's motion should be denied because there are disputed material facts as to her interference and retaliation claims. Plaintiff also argues she provided adequate notice of her intention to exercise her FMLA rights. Pl.'s Opp'n at 1-2. In addition, plaintiff argues the statute of limitations has not expired because defendant engaged in a "willful" violation of her FMLA rights. Id. at 24.

For the reasons to be discussed, the Court finds that there are disputed issues of material fact as to whether plaintiff presents viable FMLA interference and retaliation claims. However, defendant's motion will still be granted because plaintiff's claim is barred by the applicable two year statute of limitations. The Court denies plaintiff's request to apply a three year statute of limitations. The Court finds that defendant's alleged FMLA violations were not willful.

## DISCUSSION

### 1. Summary Judgment Standard

Pursuant to Fed. R. Civ. P. 56, summary judgment is appropriate where the court is satisfied that "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any . . . demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Summary judgment is not appropriate if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict in favor of the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The materiality of a fact turns on whether under the governing substantive law a dispute over the fact might have an effect on the outcome of the suit. Id. The court must view all evidence and draw all reasonable inferences in the light most favorable to the non-moving party. See Startzell v. City of Phila., 533 F.3d 183, 192 (3d Cir. 2008) (citation omitted).

The moving party bears the initial burden of informing the court of the basis for its motion and demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 322-23. Once the burden is met, the burden shifts to the non-moving party to "set forth specific facts showing that there [are] . . . genuine factual issues that properly can be resolved only by a finder of

fact because they may reasonably be resolved in favor of either party." <u>Anderson</u>, 477 U.S. at 250. The party opposing summary judgment may not "rest upon mere allegation[s] or denials of [her] pleading," but must set forth specific facts and present affirmative evidence demonstrating that there is a genuine issue for trial. <u>Id.</u> at 256-57; Fed. R. Civ. P. 56(c)(1)(A). Additionally, "if the non-moving party's evidence 'is merely colorable, . . . or is not significantly probative, . . . summary judgment may be granted.'" <u>Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Engineers, AFL-CIO</u>, 982 F.2d 884, 890-91 (3d Cir. 1992) (quoting <u>Gray v. York Newspapers, Inc.</u>, 957 F.2d 1070, 1078 (3d Cir. 1992)).

## 2. FMLA

The FMLA is designed to "balance the demands of the workplace with the needs of families." 29 U.S.C. § 2601(b)(1). It permits "employees to take reasonable leave for medical reasons" so long as the leave is taken "in a manner that accommodates the legitimate interests of employers." 29 U.S.C. § 2601(b)(2)-(3). In order to accommodate the employer's needs an employee taking FMLA leave must provide "adequate notice of their need for leave." <u>Lichtenstein v. Univ. of Pittsburgh Med. Ctr.</u>, 691 F.3d 294, 301 (3d Cir. 2012) (citing 29 U.S.C. § 2612(e)). If the need for leave is sudden or unforeseeable, employees are obligated to notify their employer "as soon as practicable," 29 C.F.R. § 825.303(a), and

"provide sufficient information for an employer to reasonably determine whether the FMLA may apply." Id. at 301; 29 C.F.R. § 825.303(b).

There are different justifications for taking leave under the FMLA, including the birth of a child, the need to care for a close relative, or the applicant's own health issues. 29 U.S.C. § 2601(b)(2). To be eligible for leave the applicant must have or be caring for someone with a "serious health condition." Lichtenstein, 691 F.3d at 304. A "serious health condition" involves "inpatient care in a hospital" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11).

An employee who qualifies for FMLA leave is entitled to "12 work weeks of leave during any 12-month period." 29 U.S.C. § 2612(a)(1). Where an employer violates an employee's FMLA rights, the employee may bring a claim directly against the employer. See 29 U.S.C. § 2617. There are two types of claims under the FMLA, referred to as "interference" and "retaliation" claims. Callison v. City of Phila., 430 F.3d 117, 119 (3d. Cir. 2005).

To prove an interference claim plaintiff must show she is: (1) an employee who is entitled to FMLA benefits and (2) her employer denied those benefits. Id. (citing 29 U.S.C. §§ 2612(a), 2614(a)). In other words, plaintiff must show that defendant "interfer[ed] with, restrain[ed], or den[ied] the exercise" of her FMLA rights. 29 U.S.C. § 2615(a)(1).

11

To prove a retaliation claim plaintiff must show: (1) she stated her intention to take FMLA leave, (2) she suffered an adverse employment action, and (3) the adverse employment action was causally related to her decision to take FMLA leave. Lichtenstein, 691 F.3d at 301. The touchstone of this analysis is whether an employer "discriminate[d] against any individual" merely for the exercise of her FMLA rights. 29 U.S.C. § 2615(a)(2); see also Lichtenstein, 691 F.3d at 301-302.

**A. Notice**

The Court's analysis begins with a determination as to whether plaintiff gave defendant adequate FMLA notice. Plaintiff argues she supplied adequate FMLA notice by telling defendant she was "sick in lieu of." Plaintiff argues this notified defendant she was ill when she called out sick on December 2, 2010. Pl.'s SOF ¶ 15. Defendant counters by asserting that plaintiff actually said "comp in lieu of," a statement which fails to give any indication that plaintiff requested FMLA leave. Plaintiff also alleges she told defendant on December 3, 2010 she intended to apply for FMLA leave. Pl.'s SOF ¶ 19.

A relevant case to the parties' notice dispute is Lichtenstein, supra. In Lichtenstein, the plaintiff, a psychiatric technician, brought suit against her employer hospital network and direct supervisor alleging they interfered with her FMLA rights and retaliated against her for asserting her rights. 691 F.3d at

296. The conflict between the plaintiff and the defendants began shortly after the plaintiff was hired in September 2007. Id. Over the subsequent months, the plaintiff was tardy or absent on numerous occasions. Id. The plaintiff's supervisor resolved to fire her on December 30, 2007, after the plaintiff showed up late for a shift and left early. Id. at 297. However, the plaintiff left for vacation on December 31, 2007, intending to return on January 3, 2008. Id.

The plaintiff did not return to work on January 3, 2008. Id. at 298. Rather, because the plaintiff's mother had fallen seriously ill that morning, she called the defendants and informed them that she was unable to attend work because she needed to care for her sick mother. Id. at 298-99. The plaintiff returned to work on January 7, 2008. Id. at 299. The supervisor intended to fire the plaintiff the next day. Id. However, on the morning of January 8, 2008, the plaintiff requested leave to care for her mother. Id. The defendants moved ahead with the plaintiff's termination on January 10, 2008. Id. at 307. The district court granted the defendants' motion for summary judgment on the ground that the plaintiff did not give adequate notice of her intent to invoke her FMLA rights. Id. at 296.

On appeal the Third Circuit reversed the grant of summary judgment, holding that the plaintiff's statement that she needed to take leave to care for her mother created a fact question as to

13

whether she gave adequate FMLA notice. Id. at 303. The Court stated, "[h]ow the employee's notice is reasonably interpreted is generally a question of fact, not law." Id. (citations omitted).

Considering the low bar set for notice in Lichtenstein, and the Third Circuit's holding that notice is a matter of fact in most circumstances, the Court rejects defendant's argument that as a matter of law plaintiff did not give it adequate notice of her intent to exercise her FMLA rights. Plaintiff alleges she told defendant she was "sick in lieu of" and that she intended to take FMLA leave. This evidence is sufficient to create a fact question as to whether plaintiff gave defendant adequate FMLA notice.

**B. Interference Claim**

Having denied defendant's notice defense, the Court will analyze plaintiff's interference claim. As stated above, it is unlawful to interfere with or restrain FMLA rights. 29 U.S.C. ⬚ 2615(a)(1). Interference is established where an employee entitled to FMLA benefits is denied the benefits by her employer. Callison, 430 F.3d at 119. Here, plaintiff was not denied FMLA leave because she was retroactively given FMLA leave for her December 2 and 3, 2010 absences. Nevertheless, a fact question exists as to whether defendant interfered with plaintiff's FMLA rights. Plaintiff argues she was interfered with because she had to re-submit her FMLA application multiple times due to the "job description" requirement. Plaintiff claims defendant only applied this

requirement to her. Plaintiff supports this claim by pointing to the fact the job description requirement is not listed in defendant's FMLA policy. Although defendant argues the job description requirement applied to everyone, the fact that this was not listed in defendant's written policy creates a fact question. A jury must decide whether all employees were subject to the same non-written job description requirement as applied to plaintiff. Accordingly, a fact question exists as to whether defendant interfered with plaintiff's FMLA rights.[5]

**C. Retaliation Claim**

Because FMLA leave is intrinsically tied to employment concerns, and retaliation is concerned with potential discrimination by employers against employees, courts assess retaliation claims using the principles of employment discrimination law. Lichtenstein, 691 F.3d at 301-02. Accordingly, courts employ the burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to determine whether discrimination occurred. See Lichtenstein, 691 F.3d at 302. Under the McDonnell Douglas framework an employee bears the initial burden of demonstrating a prima facie case. 411 U.S. at 802. To establish a prima facie case an employee must identify record

---

[5] To the extent plaintiff argues defendant interfered with her FMLA rights by refusing to withdraw the discipline imposed for her alleged work rule violations on December 2 and 3, 2010, the issue is discussed infra.

evidence supporting each element of a retaliation claim. Lichtenstein, 691 F.3d at 302. If the employee establishes a prima facie claim, the burden shifts to the employer to "articulate some legitimate, nondiscriminatory reason" for the adverse employment actions taken against the employee. McDonnell Douglas, 411 U.S. at 802. The employer's burden to proffer a legitimate non-discriminatory reason for an adverse employment action is minimal. Lichtenstein, 691 F.3d at 302. If and when the burden is met the employee has an opportunity to disprove the employer's "articulated legitimate reasons" for any adverse employment action using "direct or circumstantial" evidence. Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).

As noted, plaintiff has the initial burden of establishing a prima facie case. Namely, plaintiff must prove she gave notice of her intention to take FMLA leave, she suffered an adverse employment action, and the adverse employment action was causally related to her decision to apply for FMLA leave. Lichtenstein, 691 F.3d at 302. Plaintiff claims she suffered an adverse employment action by virtue of the fact she was disciplined for taking FMLA leave on December 2 and 3, 2010.

The Court finds fact questions must be resolved to decide plaintiff's retaliation claim. First, the Court has already ruled a fact question exists as to whether plaintiff gave adequate FMLA notice. The same is true for whether plaintiff suffered an adverse

16

employment action. Defendant argues plaintiff's discipline was related to its job requirements and work rules that were collectively bargained for by plaintiff's union, and not because of anything having to do with the FMLA. However, plaintiff argues, and the Court finds, a fact question exists as to whether plaintiff should have been disciplined for only one day instead of two, and whether the requirements to stay at home and notify defendant when leaving home applied to her.

As to the third requirement to prove a retaliation claim, causation, the "temporal proximity" of plaintiff's purported invocation of FMLA rights to the disciplinary actions levied against plaintiff creates "'an inference of causality'" which "'defeat[s] summary judgment.'" <u>Lichtenstein</u>, 691 F.3d at 307 (quoting <u>LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n</u>, 503 F.3d 217, 232 (3d Cir. 2007)). Accordingly, a fact question exists as to whether plaintiff was retaliated against because she exercised her FMLA rights.[6]

---

[6] Defendant argues its motion should be granted because plaintiff committed fraud. This is plainly a fact question. Plaintiff argues she was absent from work because she was ill. This is supported by her hospital visit and medical records, including a doctor's note directing plaintiff not to return to work until December 6, 2010. Defendant argues plaintiff's illness excuse was a subterfuge and plaintiff really wanted to attend her aunt's funeral. This creates a fact question not resolvable in the context of a motion for summary judgment. Further, to the extent plaintiff argues defendant retaliated against her by requiring her to submit multiple FMLA applications, the issue is discussed <u>supra.</u>

### 3. Statute of limitations

In general, claims for relief under the FMLA must be brought within two years of "the date of the last event constituting the alleged violation for which the action is brought." 29 U.S.C. § 2617(c)(1). However, where a plaintiff can show that an employer willfully violated her FMLA rights, the statute of limitations is extended to three years. 29 U.S.C. § 2617(c)(2). To make a showing of willfulness an employee must show that the employer's interference or retaliation was knowingly in violation of the FMLA's statutory protections or the employer acted with reckless disregard for the same. Scheidt v. Donahoe, C.A. No. 13-836 (JAP), 2014 WL 6991982, at *5 (D.N.J. Dec. 10, 2014); Durham v. Atl. City Elec. Co., C.A. No. 08-1120 (RBK/AMD), 2010 WL 3906673, at *9 (D.N.J. Sept. 28, 2010).

In Scheidt, the plaintiff contended that his employer willfully violated his FMLA rights because the manager denied his FMLA application even though he provided two different letters stating he was eligible for FMLA benefits. 2014 WL 6991982, at *5. Nevertheless, the court rejected plaintiff's argument that the employer acted willfully. Id. The court reasoned that simply showing that the employer received plaintiff's letters did not prove the employer acted with "knowledge or reckless disregard" of whether its conduct constituted a FMLA violation. Id. The court

explained the denial could "easily [be] explained by a mere administrative error." Id.

Plaintiff's FMLA application was granted on January 13, 2011, and the discipline which forms the basis for her retaliation claim was handed down on December 7, 2010. Pl.'s SOF ¶¶ 22, 23, 61; Def.'s SOF ¶¶ 17, 18. Thus, under 29 U.S.C. § 2617(c)(1), the latest plaintiff could have filed her complaint under the two-year statute of limitations was January 13, 2013. Plaintiff filed her complaint on August 2, 2013. Therefore, even if plaintiff can prove a FMLA violation, her case may only proceed if the three-year statute of limitations applies. This requires plaintiff to show that defendant willfully violated her FMLA rights. See 29 U.S.C. § 2617(c)(1)-(2).

Plaintiff's arguments as to willfulness are not convincing. In the first instance plaintiff argues defendant willfully interfered with her FMLA rights by repeatedly requiring her to re-submit her applications. Plaintiff argues Deputy Warden Cohen knew the alleged deficiencies were not required and that defendant knew plaintiff was eligible for FMLA leave the minute she applied. Pl.'s Opp'n at 25. The problem with plaintiff's argument is that it is not supported by evidence. No evidence exists to show that defendant "made up" the job description requirement. There is also no evidence to support plaintiff's contention that defendant intentionally mishandled plaintiff's paperwork. To the contrary,

Cohen testified the prison started the job description policy so a doctor could properly evaluate an applicant for FMLA leave. See Cohen Dep. at 38:14-17, 40:9-13.  Cohen also testified defendant had a policy requiring FMLA applicants to submit a job description that was reviewed by the doctor diagnosing the FMLA's predicate "serious health condition." Id. at 36:20-23; 38:18-39:18. This testimony rebuts plaintiff's contention that Cohen knew there was no written job description requirement. Pl.'s Opp'n at 25; see also Cohen Dep. at 37:12-18 (defendant's job description requirement existed since as early as April 2010).

While plaintiff disputes certain aspects of defendant's FMLA policy, and what precisely she may have been told by whom and when, she does not genuinely or credibly dispute that defendant's policies required the submission of a job description along with an FMLA application. Plaintiff also does not dispute that defendant had established procedures for processing FMLA applications through its operations department. While plaintiff may not agree with defendant's requirements, there is no question defendant provided a reasonable justification for its job description policy. The fact that defendant's formal written policy had not yet been updated does not show willfulness. Plaintiff has not presented any evidence, for example, that Cohen fabricated her testimony or that only plaintiff had to give her doctor a job description.  Moreover, defendant's Assistant County Counsel

20

testified that defendant's FMLA policies did not necessarily have to be in writing. Gross Dep. at 22:15-17.

The Court disagrees with plaintiff that a fact question exists as to willfulness because she had to re-submit her FMLA applications. Plaintiff does not contest the fact that she did not comply with the instructions she was given to fill out the required FMLA paperwork. Plaintiff does not even contest that on at least one occasion she did not submit the job description she was given to use. While plaintiff did not agree with defendant's requirements, they were not unreasonable or arbitrary and capricious. The fact that plaintiff asked for FMLA leave does not excuse her from complying with defendant's paperwork requirements, especially since they were not unduly burdensome or unreasonable.

Rather than interfering with plaintiff's FMLA application, the evidence shows that defendant tried to assist plaintiff. This is directly contrary to plaintiff's argument that defendant acted willfully. It is of course true that plaintiff had to re-submit her FMLA application a number of times. However, in and of itself this does not show willfulness, especially since defendant repeatedly instructed plaintiff how to properly submit her paperwork. See Def.'s Reply at 2-4. The evidence shows defendant had a policy which not only accepted and processed FMLA applications, but actually facilitated successful applications by employees. Giberson Dep. at 60:7-10. For example, Cohen sent

plaintiff corrective memos instructing her on the proper method for submitting an FMLA application. Def.'s Reply Exhibits A-E. The Court agrees with defendant that it repeatedly gave plaintiff a "roadmap" regarding how to correctly fill out her paperwork. Def.'s Reply at 2. The fact that this was done is plain evidence that defendant did not act to willfully interfere with plaintiff's FMLA rights.

Plaintiff also argues defendant's willfulness is shown by the fact that it did not withdraw the discipline it imposed after plaintiff called out sick on December 2 and 3, 2010. The Court rejects this argument. Plaintiff was not disciplined for taking FMLA leave. Instead, plaintiff was disciplined because she did not follow defendant's work rules and requirements. The Court agrees with defendant that plaintiff's "discipline had to do with [plaintiff] failing to call out properly and [plaintiff] leaving her place of confinement to attend an aunt's funeral." Id. at 8. Plaintiff does not dispute that even though she called out sick she attended her aunt's funeral and failed to inform defendant she was leaving her home. Plaintiff also does not dispute the fact that she did not completely respond to defendant's questions when she was asked why she was calling out on December 2, 2010. As noted by defendant, "[b]y refusing to call out properly and inform [defendant] of the reason for the call out, [plaintiff] violated

the rules of the Atlantic County Justice Facility. The collectively bargained discipline measures were instituted." Id. at 6.

Plaintiff argues defendant misinterpreted its work rules and should not have disciplined her. Even if this is true, which the Court is not finding, this does not change the fact there is no evidence defendant acted willfully. No evidence exists to show defendant knowingly misapplied its work rules or that defendant intended to punish plaintiff for taking FMLA leave. There also is no evidence defendant's interpretation of its work rules was unreasonable or arbitrary and capricious. In fact, the opposite is true as demonstrated by the fact plaintiff never appealed her discipline. Plaintiff is hard pressed to argue defendant is not permitted to verify her absences if she is on paid leave but not if she takes FMLA leave. Pl.'s Resp. to Def.'s SOF ¶ 24. The best plaintiff can do is to show that perhaps defendant made an administrative error. As noted in Scheidt, the mere occurrence of an administrative error does not show willfulness. 2014 WL 6991982, at *5. Moreover, it was not unreasonable for defendant to count plaintiff's work rule violations as two violations rather than one. This is true because plaintiff was cited for violating different rules on different days. Further, even if an employer acts unreasonably, which is not the case here, willfulness is not proven in the absence of a showing of recklessness. McLaughlin v.

Richland Shoe Co., 486 U.S. 128, 133 (1988). No such evidence exists here.

Simply put, there is no basis to conclude defendant's initial denials of plaintiff's FMLA applications were done with knowledge that the denials were improper or with reckless disregard of plaintiff's FMLA rights. Nor is there evidence that defendant's failure to withdraw plaintiff's relatively minor discipline was willful. Thus, plaintiff's claims are barred by the applicable two-year statute of limitations.[7]

---

[7] Plaintiff's complaint contains three counts. Count III asks the Court to declare section 9.06 of defendant's employee manual null and void and permanently enjoin defendant from disciplining plaintiff for a failure to comply with the employee manual. Compl. ¶ 82. According to plaintiff the offending provision requires employees to provide advance notice of any litigation filed with any court of law. Plaintiff has never addressed Count III in the case and has failed to provide the Court with any evidence to support her request for declaratory judgment and injunctive relief. Therefore, the Court denies plaintiff's request for extraordinary relief and will enter summary judgment on Count III. See Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 342 F.3d 242, 259 n.14 (3d Cir. 2003) (noting that a party who fails to adequately brief her claim waives that claim); Reynolds v. Wagner, 128 F.3d 166, 178 (3d Cir. 1997) ("[A]n argument consisting of no more than a conclusory assertion . . . (without even a citation to the record) will be deemed waived."); see also Fed. R. Civ. P. 56(e)(3) (permitting the Court to grant summary judgment in the absence of supporting facts so long as the movant is entitled to summary judgment). Further, since plaintiff abandoned Count III by never pursuing the claim in the case, the Court will exercise its discretion to deny plaintiff's requested relief. See In re Fireman's Ass'n., 443 N.J. Super. 238, 252 (App. Div. 2015)(court has discretion to deny declaratory relief).

**CONCLUSION**

In conclusion, plaintiff has demonstrated that there are fact questions that need to be resolved in order to decide plaintiff's FMLA interference and retaliation claims. However, plaintiff filed this lawsuit after the applicable two-year statute of limitation expired. While the FMLA allows for an extension of the statute of limitations where an employer willfully denies an FMLA application, there is no evidence of a willful denial. Therefore, plaintiff's claims are barred by the statute of limitations and summary judgment will be granted in defendant's favor. An appropriate Order will be separately entered.

s/ Joel Schneider
JOEL SCHNEIDER
United States Magistrate Judge


Dated: September 27, 2016